UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 19-2537-JFW(RAOx)** | Date:  October 31, 2019 |
| Title: | Caren Carl Mandoyan, et al. *-v-* Los Angeles County, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

| | |
|---|---|
| PROCEEDINGS (IN CHAMBERS): | ORDER GRANTING DEFENDANTS COUNTY OF LOS ANGELES AND JOHN NAIMO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [filed 9/9/19; Docket No. 74]; |
| | ORDER DENYING AS MOOT MOTION OF DEFENDANTS BOBBY DENHAM AND COUNTY OF LOS ANGELES (SHERIFF'S DEPARTMENT) TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [filed 9/9/19; Docket No. 75]; and |
| | ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER (1) ALLOWING THE FILING OF THE ATTACHED PROPOSED FOURTH AMENDED COMPLAINT AND (2) DISMISSING THE PENDING MOTIONS TO DISMISS AS MOOT [filed 10/30/19; Docket No. 94] |

On September 9, 2019, Defendants County of Los Angeles (the "COLA") and John Naimo ("Naimo") filed a Motion to Dismiss Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").  On September 9, 2019, Defendants Bobby Denham ("Denham") and the County of Los Angles (LASD) ("LASD") filed a Motion to Dismiss Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). On September 16, 2019, Plaintiff Caren Carl Mandoyan ("Plaintiff") filed a combined Opposition to both Motions to Dismiss.  On September 23, 2019, the COLA and Naimo filed a Reply.  On

September 23, 2019, Denham and LASD filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument.  The matters were, therefore, removed from the Court's October 7, 2019 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

   **A.      Plaintiff's Support for Jim Hellmold**

In 2013, Jim Hellmold ("Hellmold") campaigned for the office of Sheriff of LASD against the incumbent, Jim McDonnell ("McDonnell").  Third Amended Complaint ("TAC"), ¶ 14.  In his Third Amended Complaint, Plaintiff alleges that he openly urged other deputy sheriffs to vote for Hellmold.  *Id.*  Plaintiff also alleges that his supervisors, who were supporting McDonnell, knew that he was supporting Hellmold and warned him to stay quiet.  *Id.*  In November 2014, McDonnell was elected Sheriff.  *Id*. ¶ 15.  According to Plaintiff, a month later, Assistant Sheriff Denham approached Plaintiff at a Christmas party and stated: "So you were the guy that supported Helmold [*sic*] during the campaign," shook his head, and walked away.  *Id*., ¶ 16.

   **B.      Plaintiff's Termination as a Deputy Sheriff**

In July 2016, Deputy Amber Taylor ("Taylor"), who had been in a romantic relationship with Plaintiff, filed a complaint against Plaintiff with the LASD, claiming that he physically assaulted, stalked, and harassed her.  *Id*., ¶¶ 17-18.  Although Plaintiff alleges that Taylor's complaint was "fictitious" and that he did nothing wrong, the LASD took Taylor's complaint seriously and directed the Internal Affairs Bureau ("IAB") to conduct a formal investigation into Plaintiff's alleged misconduct.  *Id.*, ¶¶ 17 and 21-24.  On August 15, 2016, LASD notified Plaintiff of its intent to discharge him and he was offered the opportunity to respond to LASD's notice of discharge at a *Skelly* hearing.  COLA's Request for Judicial Notice ("RJN"), Ex. 2, ¶ 7.  The *Skelly* hearing was held on September 6, 2016, and LASD notified Plaintiff that he would be discharged on September 14, 2016.  *Id*., ¶ 8.  On September 24, 2016, Plaintiff was officially terminated.  *Id*., ¶ 13.  Plaintiff alleges that LASD used Taylor's complaint "as justification for terminating Plaintiff in retaliation for his political speech" supporting Hellmold in 2013.  *Id*., ¶¶ 13 and 19.

In 2017, Plaintiff appealed his termination to the Civil Service Commission and requested a full evidentiary hearing.  *Id*., ¶¶ 24-25; RJN, Exh. 2, ¶ 9.  A Hearing Officer for the Civil Service Commission conducted a five day evidentiary hearing on various dates between July 2017 and September 2018.  TAC, ¶ 10.  On January 4, 2018, the Hearing Officer issued proposed findings of fact and conclusions of law and determined that LASD's termination of Plaintiff was proper and justified.  *Id.*  Plaintiff filed objections to the Hearing Officer's recommended decision, and on May 16, 2018, Plaintiff argued his objections before the Civil Service Commission.  *Id.*  On May 23, 2018, the Civil Service Commission adopted the hearing officer's recommendation and issued its Order sustaining Plaintiff's termination.  *Id.*

   **C.      Plaintiff's Lawsuits Against COLA**

On August 13, 2018, Plaintiff filed a petition for a writ of mandamus against COLA in Los

Angeles Superior Court, in an action entitled *Mandoyan v. Los Angeles County Civil Service Commission*, Case No. BS174714, challenging the Civil Service Commission's decision (the "Civil Service Writ Litigation"). *Id.*, ¶ 26. In the Civil Service Writ Litigation, Plaintiff asked the court to vacate the Civil Service Commission's Order sustaining his termination, restore his employment, and award him back pay with interest. RJN, Ex. 2 at Prayer for Relief. In addition, on August 27, 2018, Plaintiff filed a complaint for damages against COLA in Los Angeles Superior Court, in an action entitled *Mandoyan v. County of Los Angeles*, Case No. BC719337, alleging various claims arising from his hearing before the Civil Service Commission (the "Civil Service Damages Litigation"). *Id.*, Exh. 3. Plaintiff voluntarily dismissed these lawsuits on December 31, 2018. *Id.*, Exhs. 4 and 5.

### D. Plaintiff's Alleged Reinstatement as a Deputy Sheriff

During the pendency of the Civil Service Writ Litigation and Civil Service Damages Litigation, Plaintiff volunteered to assist Alex Villanueva ("Villanueva") in his campaign for Sheriff against incumbent McDonnell. TAC, ¶ 27. Plaintiff spoke on Villanueva's behalf and criticized McDonnell's competency to run LASD. *Id.* On November 6, 2018, Villanueva was elected as Sheriff. *Id.*, ¶ 29. Shortly thereafter, Villanueva unilaterally created a "Truth and Reconciliation Panel" (the "Panel") to review all LASD disciplinary cases from 2012 through 2016. *Id.*, ¶ 30. Plaintiff was the first terminated officer to have his case reviewed by the Panel. *Id*. The Panel found that the punishment imposed on Plaintiff had been excessive and recommended that Plaintiff be restored to the position of Deputy Sheriff. *Id.*, ¶ 31.

As a result of the findings of the Truth and Reconciliation Panel, on December 28, 2019, Plaintiff and LASD entered into a settlement agreement (the "Settlement Agreement"). In the Settlement Agreement, LASD agreed to rescind Plaintiff's September 14, 2016 discharge and to change Plaintiff's Performance Recording and Monitoring System from "Founded" to "Unresolved" or "Unfounded" for the various allegations alleged against Plaintiff in the IAB investigation. RJN, Ex. 7. In exchange, Plaintiff agreed to waive any future administrative or judicial remedies with respect to the IAB investigation and to dismiss the Civil Service Writ Litigation and Civil Service Damages Litigation against COLA. *Id.* LASD and Plaintiff also agreed that Plaintiff would serve a twelve day suspension (from September 14, 2016 through September 29, 2016) and would be restored to the position of Deputy Sheriff Generalist and given full back pay and benefits from September 30, 2016 to the date the Settlement Agreement was executed.[1] *Id.* Pursuant to the terms of the Settlement Agreement, Plaintiff was rehired on December 28, 2018. *Id*.

On January 30, 2019, the Los Angeles County Board of Supervisors (the "Board") sent a letter, signed by all five Supervisors, to Villanueva, advising Villanueva that Plaintiff's discharge "was based on documented evidence and the grounds for termination had been upheld by the Civil

---

[1] On January 17, 2019, LASD and Plaintiff executed an amendment to the Settlement Agreement which provided that Plaintiff's twelve day suspension would be effective from September 14, 2016 through September 26, 2016 and that Plaintiff would be reimbursed for back pay and benefits from September 26, 2016 through December 27, 2018, the day before Plaintiff was rehired as a Deputy Sheriff Generalist. *Id.*, at 7.

Service Commission," and that the Supervisors had "grave concerns over how this particular matter has been handled and the message it sends to law enforcement personnel, as well as victims of domestic violence and the public at large."  RJN, Exh. 6.

On February 5, 2019, the Department of Auditor-Controller received a request from LASD to pay Plaintiff back pay for the period from September 26, 2016 through December 27, 2018 pursuant to the terms of the Settlement Agreement.  The Department of Auditor-Controller notified the Office of County Counsel that LASD had made such a request because the Settlement Agreement did not contain a signature by County Counsel or an attorney operating under County Counsel supervision, which is required in the ordinary course of business.  As a result of this notification, the Office of County Counsel discovered that LASD had entered into the Settlement Agreement with Plaintiff.

After becoming aware of Plaintiff's "reinstatement" and the Settlement Agreement, COLA concluded that Villanueva's "reinstatement" of Plaintiff and the Settlement Agreement were void.  Based on COLA's conclusion that Plaintiff's reinstatement and the Settlement Agreement were void, the Auditor-Controller for COLA stopped paying Plaintiff his wages and benefits.  *Id*.  Plaintiff alleges that these actions by the Board and the Auditor-Controller and various employees of COLA were in retaliation for Plaintiff's political speech supporting Villanueva and criticizing McDonnell during the campaign.

### E.     Ongoing Litigation

On March 3, 2019, COLA filed a Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief against Villanueva, Plaintiff, and LASD in Los Angeles Superior Court, entitled *County of Los Angeles v. Villanueva*, Case No. 19STCP00630, challenging Villanueva's "reinstatement" of Plaintiff's employment as an LASD Deputy Sheriff.  RJN, Exh. 8.  On August 19, 2019, the court granted COLA's request for a preliminary injunction, finding it "undisputed" that Plaintiff was rehired "in violation of applicable Civil Rules."  RJN, Exh. 13.  The court ordered Plaintiff to cease holding himself out as a Deputy Sheriff and to relinquish all County property in his possession, including his uniform, badge and weapon.  In addition, the Court found that Plaintiff's unauthorized reinstatement was "harmful to the Sheriff's Department as an institution and a danger to the public."  *Id*.  After COLA filed the Reinstatement Action, Plaintiff filed this action on April 3, 2019.  On approximately June 27, 2019, Plaintiff filed a Verified Petition for Writ of Mandate against COLA in Los Angeles Superior Court, entitled *Mandoyan v. Los Angles County*, Case No. 19STCP02773, seeking to compel the Auditor-Controller to pay Plaintiff's salary and benefits (the "Wage Action"), which is still pending.  *Id*., Exh. 9.

### F.     Procedural History

After filing his Complaint on April 3, 2019, Plaintiff filed his First Amended Complaint on May 22, 2019.  On July 26, 2019, Plaintiff filed a Second Amended Complaint.  On August 26, 2019, Plaintiff filed a Third Amended Complaint naming COLA, LASD, Denham (Assistant Sheriff), Naimo (head of the Auditor-Controller's Office), and Supervisors Kuehl, Solis, Hahn, and Barger, alleging claims for: (1) violation of First Amendment speech rights pursuant to 42 U.S.C. §§ 1983, 1988; (2) violation of First Amendment political affiliation rights pursuant to 42 U.S.C. §§ 1983, 1988; and (3)

violation of First Amendment political association rights pursuant to 42 U.S.C. §§ 1983, 1988.[2]

On October 2, 2019, Plaintiff filed a Notice of Voluntary Dismissal, dismissing without prejudice LASD, Kuehl, Solis, Hahn, Barger, Naimo, and Denham.  Therefore, the only remaining defendant in this action is COLA.

## II.   Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."  *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a Court does not need to grant leave to amend in cases where the

---

[2]  The Court has reviewed Plaintiff's Ex Parte Application for an Order (1) Allowing the Filing of the Attached Proposed Fourth Amended Complaint and (2) Dismissing the Pending Motions to Dismiss as Moot ("Application"), filed October 30, 2019 (Docket No. 94), and COLA's Opposition, filed October 30, 2019 (Docket No. 96).  The Court concludes that the proposed amendment is futile and that Plaintiff has failed to demonstrate good cause to file a Fourth Amended Complaint.  Accordingly, for the reasons stated in Defendant's Opposition, the Application is **DENIED**.

Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.   Discussion

In his Third Amended Complaint, Plaintiff alleges three claims for retaliation under Section 1983 based on two events: (1) Plaintiff's political support for Hellmold when he ran for Sheriff during 2013 and his subsequent 2016 termination allegedly due to his support of Hellmold; and (2) Plaintiff's political support of Villanueva when he ran for Sheriff during 2018 and the actions taken by COLA in response to his purported "reinstatement" by Villanueva.[3] In its Motion, COLA argues that all three of Plaintiff's claims fail as a matter of law.

#### A.   Plaintiff's Claims Related to His Termination Due to His Political Support of Hellmold Fail.

##### 1.   Plaintiff's Claims Are Barred by Res Judicata.

In this case, Plaintiff seeks to re-litigate his claims related to the propriety of his termination in 2016. However, the doctrine of *res judicata* precludes Plaintiff from relitigating claims that were fully and finally resolved on the merits in a prior action. In *Commissioner v. Sunnen*, 333 U.S. 591 (1948), the Supreme Court stated the "general rule of *res judicata*":

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and the privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." [citation omitted]. The judgment puts an end to the cause of action which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating judgment.

The doctrine of *res judicata* applies when there exists between two separate cases: (1) an identity of claims; (2) an identity or privity between parties in both cases; and (3) a final judgment on the merits in the first case. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir.2002).

With respect to the first element, the doctrine of *res judicata* bars the claims actually raised as well as any claims "upon any ground whatever" that might have been offered. In applying this principle, the Ninth Circuit has concluded that *res judicata* bars a party from relitigating any claims arising out of the "same transactional nucleus of facts" as litigated in a prior matter. *Int'l Union v. Karr*, 994 F. 2d 1426, 1430 (9th Cir. 1993). Therefore, switching legal theories does not create a

---

[3] Plaintiff has failed to allege separate claims related to each of these two events. Instead, each of the three claims alleged by Plaintiff – retaliation based on speech, retaliation based on political affiliation, and retaliation based on political association – is based on both events.

new cause of action sufficient to avoid the bar of *res judicata*. *Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 62, *cert. denied*, 531 U.S. 904 (1st Cir. 2000). As long as the prior court had jurisdiction to hear both federal and state law claims, all theories of liability are precluded. *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000).

In this case, with respect to the first element, it is undisputed that Plaintiff is attempting to re-litigate the same issues in this action that were decided adverse to him in the Civil Service Commission hearing that resulted in his termination. *See Swartzendruber v. City of San Diego*, 3 Cal. App. 4th 896, 908 (1992) (holding that plaintiff's claim for federal civil rights violation restated cause of action for wrongful termination in constitutional terms, and thus involved same primary right to continued employment). With respect to the second element, it is undisputed that Plaintiff and COLA are the same parties in both proceedings. With respect to the third element, the Civil Service Commission issued a judgment, which is final in light of Plaintiff's dismissal of the Civil Service Writ Litigation. *See Jamieson v. City Council of City of Carpenteria*, 204 Cal. App.4th 755, 760 (2012) (recognizing that unchallenged administrative decisions have binding, preclusive effect). Therefore, the Court concludes that all of Plaintiff's claims related to his termination are barred by the doctrine of *res judicata*.[4] *Baker v. White*, 2013 WL 950730, at *5 (S.D. Cal. Mar. 12, 2013) (holding that Civil Service Commission proceedings barred the plaintiff's Section 1983 claim under California *res judicata* law); *County of Santa Cruz*, 39 F.3d at 1034 (dismissing § 1983 claim as barred by Civil Service Commission proceedings where plaintiff merely "restates his wrongful

---

[4] Plaintiff does not challenge the merits of COLA's argument that his claims based on his political support for Hellmold in 2013 and his subsequent termination in 2016 are barred by the doctrine of *res judicata* or the statute of limitations. Instead, Plaintiff argues that COLA is equitably estopped from claiming *res judicata* applies in this case because Plaintiff entered into the Settlement Agreement with LASD. However, COLA argues and the Court agrees that the Settlement Agreement was void because LASD had no authority to settle litigation or enter into the Settlement Agreement on behalf of COLA. *See* Los Angeles County Charter, Article VI, Section 21; *see also Burchett v. City of Newport Beach*, 33 Cal. App. 4th 1472, 1479 (1995) ("No government, whether state or local, is bound to any extent by an officer's acts in excess of his [or her] authority") (alterations in the original) (citation omitted). As a matter of law, Plaintiff is presumed to know the powers and limitations of County employees, such as Villanueva. *Id.* ("One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his [or her] peril to ascertain the extent of his [or her] powers to bind the government for which he [or she] is an officer") (alterations in the original) (citation omitted). Therefore, the Court concludes that equitable estoppel does not apply in this case. *See 1041 20th Street, LLC v. Santa Monica Rent Control Board*, 38 Cal. App. 5th 27 (2019) (holding that "principles of estoppel may not be invoked to directly contravene statutory limitations"). Similarly, the Court concludes that Plaintiff's extrinsic fraud argument – that LASD personal falsified incriminating evidence and suppressed exculpatory evidence at Plaintiff's Civil Service Commission hearing – is unpersuasive because the suppression of evidence is classified as intrinsic fraud and is not grounds for invalidating a judgment. *Morales v. City of Los Angeles*, 66 Fed. App'x 128, 129 (9th Cir. 2003) ("Concomitantly, the suppression of evidence is classified as intrinsic fraud and therefore is not a ground for invalidating the judgment"). In addition, Plaintiff has failed to cite any authority demonstrating that extrinsic fraud operates as an exception to the doctrine of *res judicata*.

termination contentions in constitutional terms").

Accordingly, all of Plaintiff's claims related to his termination must be dismissed, and because amendment would be futile, they are dismissed without leave to amend.

### 2. Plaintiff's Claims Are Barred by the Statute of Limitations.

Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts apply the forum state's statute of limitations for personal injury actions. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). California's statute of limitations for personal injury claims is two years. Cal. Civ. Proc. Code § 335.1.

In this case, the Court concludes that Plaintiff's allegations concerning his termination on September 24, 2016 are time-barred. Plaintiff's claim regarding his termination is based on his political support for Hellmold during his 2013 campaign for Sheriff. Specifically, Plaintiff alleges that sometime in 2013, he was "warned to stay quiet" about his support for Hellmold and, subsequently, at a Christmas party in December 2014, Denham allegedly said "[s]o you were the guy that supported Helmold [*sic*] during the campaign" and walked away shaking his head. Thus, Plaintiff's Section 1983 claim accrued, at the latest, on September 24, 2016 when he was terminated. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). However, Plaintiff did not file his initial complaint in this matter until April 3, 2019, over two and a half years after his claim accrued. Therefore, all of Plaintiff's claims related to his termination are barred by the statute of limitations.

Accordingly, all of Plaintiff's claims related to his termination must be dismissed, and because amendment would be futile, they are dismissed without leave to amend.

### B. Plaintiff's Claims Related to His Political Support of Villanueva Fail Because He Lacks Standing.

Where a plaintiff is "not entitled to his job at all," the plaintiff has "no standing to complain that his discharge was violative of the First Amendment." *Ledford v. Delancey*, 612 F.2d 883, 885 (4th Cir. 1980). In *Ledford*, a social worker publicly announced his concerns that many of his clients lived in substandard housing. *Id.* Shortly thereafter, his supervisor demanded his resignation, citing inadequate job performance. *Id.* Ledford filed a lawsuit and alleged that his performance was adequate and that he was discharged because of his speech activities in violation of the First Amendment. *Id.* After Ledford filed his Complaint, the defendants discovered that Ledford lacked a college degree, a prerequisite for his job. *Id.* The Fourth Circuit upheld the dismissal of his Section 1983 claim, because where a plaintiff "lacks a legal qualification for a job, he will not be heard to complain that his termination was related to protected activities." *Id.* at 886. Furthermore, Ledford "cannot have incurred any damages from deprivation of a job to which he was not entitled." *Id.*

In this case, after Plaintiff entered into a Settlement Agreement that provided for his reinstatement to the position of Deputy Sheriff, COLA declared that the Settlement Agreement and Plaintiff's reinstatement were void and the Board directed the Auditor-Controller to stop paying Plaintiff all wages and benefits. As discussed above, the Settlement Agreement and any attempt to reinstate Plaintiff was void because Villanueva had no authority to settle litigation on behalf of

COLA.[5]  Specifically. Article XI, section 4(e) of the California Constitution empowers charter counties, such as COLA, to regulate the powers and duties of the county's officers.  Pursuant to this constitutional authority, Article VI, section 21 of the Los Angeles County Charter provides:

> The County Counsel shall represent and advise the Board of Supervisors and all County, township and school district officers, in all matters and questions of law pertaining to their duties, and shall have exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party.

Thus, the Charter vests the County Counsel's Office and the Board with exclusive authority over civil actions and proceedings involving or concerning COLA or its officers.  In contrast, no statute, regulation, provision, or ordinance grants the Sheriff authority to control litigation or enter into settlement agreements on behalf of COLA.  *See G.L. Mezzetta, Inc. v. City of American Canyon*, 78 Cal. App. 4th 1087, 1093-94 (2000) ("[B]ecause the statutes in question specifically set forth the ways in which the City may enter into contracts, any other methods of contract formation – even though not explicitly prohibited by the statutes – are invalid").  Similarly, as Sheriff, Villanueva had no authority to reinstate Plaintiff.  In Los Angeles County, Civil Service Rule 17.01.A sets forth the requirements for reinstatement after separation from County service:

> After approval by the director of personnel, any person who has been separated from county service without fault or delinquency may be reinstated by the appointing power within two years from the date of such separation.

Therefore, a former employee can only be reinstated after separation from COLA in limited circumstances: (1) if the reinstatement has the approval of the Director of Personnel; (2) the reinstatement is within two years of separation; and (3) the underlying separation from COLA was "without fault or delinquency."  Plaintiff's reinstatement obviously failed to meet any of the requirements for reinstatement and, thus, was void.  *Redding v. City of Los Angeles*, 81 Cal. App. 2d 888, 896 (1947); *see also Varela v. Bd. of Police Comm'rs*, 107 Cal. App. 2d 816, 819 (1951) (holding that reinstatement of a police officer by the Police Commission was "ineffectual" because the city charter "does not invest the Police Commission with the power to reinstate members of the department who have been laid off, suspended or discharged"); *Hoertkorn v. Sullivan*, 67 Cal. App. 2d 151, 154 (1944) (holding that the San Francisco Police Commission could not reinstate former police officers because the city charter did not expressly empower it to reinstate discharged officers).  In the Third Amended Complaint, the only allegation of retaliatory conduct by COLA relates to Plaintiff's political support of Villanueva which occurred after his termination was upheld by the Civil Service Commission.  At that time, Plaintiff had no legal right to employment with LASD.  Therefore, as in *Ledford*, because Plaintiff had no right to employment with LASD, he has no standing to complain about conduct that allegedly occurred after his termination was upheld.  *See Ledford*, 612 F.2d at 886.  Accordingly, all of Plaintiff's claims related to retaliation for his political support for Villanueva must be dismissed, and because amendment would be futile, they are dismissed without leave to amend.

---

[5]  Indeed, the court in the Reinstatement Action granted COLA's request for a preliminary injunction, finding it "undisputed" that Plaintiff was rehired "in violation of applicable Civil Rules."

IV.   **Conclusion**

For all the foregoing reasons, COLA's Motion is **GRANTED**.[6]  Plaintiff's Third Amended Complaint is **DISMISSED without leave to amend** and this action is **DISMISSED with prejudice**.  Denham's and LASD's Motion to Dismiss is **DENIED as moot**.  COLA shall file a proposed Judgment consistent with this Order by November 4, 2019.

IT IS SO ORDERED.

---

[6]  Plaintiff did not allege a *Monell* claim in his Third Amended Complaint.  However, to the extent Plaintiff attempted to do so, there is no basis for *Monell* liability against COLA because his First Amendment claims fail.  *See, e.g., Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986).